UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

AUG – 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CLAUDE S. DAVID, #11448-007                    )
          Plaintiff,                            )
     USP-HAZELTON
          POB 2000
v.   Bruceton Mills, W.Va. 26525               )

Case: 1:08-cv-01375
Assigned To : Urbina, Ricardo M.
Assign. Date : 8/8/2008
Description: Pro Se Gen. Civil

Edward F. Reily, Jr.,Chairman
of the United States Parole
Commission,                                     )
                                                )
Cranston J. Mitchell,Commissioner              )
of the United States Parole                     )
Commission,                                     )
                                                )
Deborah A. Spagnoli,Commissioner               )
of the United States Parole                     )
Commission,                                     )
                                                )
Patricia K. Cushwa,Commissioner                )
of the United States Parole                     )
Commission,                                     )
                                                )
Isaac Fulwood, Jr.Commissioner                 )
of the United States Parole                     )
Commission.                                     )
                                                )
United States Parole Commission                )
5550 Friendship Boulevard,Suite 420            )
Chevy Chase, Maryland 20815-7286               )
                                                )
                    Defendants                  )
                                                )

**RECEIVED**

JUL 2 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CIVIL COMPLAINT

This is a civil complaint brought by Claude S. David who was convicted of violating the District of Columbia Code of 2nd Degree Murder. Plaintiff is confined in Federal Correctional Institutions. Defendants are the Chairman and/or commissioners of the United States Parole Commission (the "commission") and, as such, they their predecessors, or designees are and were responsible for considering and acting upon Plaintiff's request for parole. Plaintiff has been and continues to be subjected to various injurious acts by the Defendants, who has repeatedly and improperly denied Plaintiff request for parole. Plaintiff seeks declaratory and injunctive relief.

## JURISDICTION

1.   Plaintiff seeks to clear of blame and suspicion rights protected by the Ex Post Facto Clause of Article 1 § 9 of the United States Constitution, the Fifth and Fourteenth Amendment to the United States Constitution, and Federal law. This Court has jurisdiction over Plaintiff claims pursuant to 42 U.S.C. § 1983, and 28 U.S.C. § §1331 and 1343 (a)(3)(a)(4)(b)(1).

2.   This Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.

3.   The Court has the authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

(2)

## VENUE

4.    Venue is appropriate in this Court pursuant to 28 U.S.C. §1391 (b).

5.    Plaintiff Claude S. David is confined at Federal Institution U.S.P. Hazelton, in Bruceton Mills, West Virginia pursuant to a sentence imposed on 3/2/89 by the Superior Court of the District of Columbia.

6.    Defendant Edward F. Reily Jr. is current Chairman of the Commission.

7.    Defendant Patricia K. Cushwa is current Commissioner of the Commission.

8.    Defendant Isaac Fulwood Jr. is a current Commissioner of the Commission.

9.    Defendant Cranston J. Mitchell is a current Commissioner of the Commission.

10.    Defendant Deborah A. Spagnoli is a current Commissioner of the Commission.

11.    Defendants, as the Chairman and/or Commissioners of the Commission were and are responsible for reviewing and acting upon plaintiffs request for parole in accordance with the United States

(3)

Constitution and federal law and regulations.

## INTRODUCTION

12.    Plaintiff is serving sentence imposed by the Superior Court
of the District of Columbia for a specific violation of the
District of Columbia Code. At the time that Plaintiff committed
the crime for which he was convicted and sentenced, authority for
parole decisions for D.C. Code violators was vested in the District
of Columbia Parole Board.

13.    On August 5, 1997, Congress enacted the National Capital
Revitalization and self government Improvement Act. ( the revital-
ization Act. Pub. L. No. 105-33 §11231,111 Stat 712 (1997).

14.    The revitalization Act abolished the Parole Board, see Pub.
L.No. 105-33 §11231(b), and directed the defendants, as the Chairman
and Commissioners of the Commission, to conduct parole hearing for
D.C. Code prisoners pursuant to the parole laws and regulations of
the District of Columbia.

15.    On August 5, 1998, Defendants assumed the responsibility for
making parole-release decisions for all eligible D.C. Code felons,
pursuant to the revitalization Act.

16.    In 2000, despite the requirements of the revitalization Act
that the Defendants apply the parole statutes, regulations, guidlines,

(4)

and practices of the parole board, the Defendants published new
parole rules, regulations and guidelines that they deemed applicable
to any D.C. Code inmate receiving an initial parole hearing after
August 5, 1998 ( the 2000 guidelines See 28 CFR § 2.80(a)(5).

17.    For inmates who had an initial parole hearing date prior to
August 5, 1998, the defendants chose to apply the parole boards
guidelines, see CFR § 2.80(a)(4). For all other inmates, some var-
ation of the defendants 2000 guidelines apply. see Id § 2.80(a)(1)
and (5).

I.    **Regulartory Process For Parole Decisions For D.C.
      Inmates At The Time Of Plaintiff's Conviction And
      Sentence.**

18.    Before 1998, at the time that Plaintiff committed the crime
for which he is currently imprisoned and at the time he was sentenced,
the parole board administered parole proceedings for D.C. code
violators in the custody of the District of Columbia.

19.    Before 1998, when D.C. inmates were in the custody of the
United States Government, the commission was required to apply the
Parole Board regulations, guidelines,policies, and practices, which
were found by this court to have forced and effect of law.

20.    Under the Parole Board's statutes, regulations, guidelines,
policies, and practices, the minimum sentence for a crime, i.e.,
the period that an inmate must serve before he or she is eligible

for parole, satisfied the inmate accountability for the offense of
conviction.

21.   In conducting parole hearing and making parole determinations,
the Parole Board applied mandatory guidelines, many of which were
codified as municiple regulations, that carefully prescribed the
method and criteria that the Parole Board used to render decisions
on parole request as its guide for determing whether an incarcerated
individual would be paroled or re-paroled, the Parole Board used
the criteria set forth in the guidelines.

22.   At the time that the Plaintiff committed the crime for which
he is currently imprisoned, and at the time of his sentence for the
crime, the Parole Board made decisions for D.C. Code offenders
using guidelines that it formally adopted in 1985, and published in
the District of Columbia Municiple Regulations in 1987(the 1987
guidelines)

23.   In 1991, to ensure consistent and equitable application of
the 1987 guidelines and other parole regulations, the Parole Board
adopted a policy guidelines defining terms used in the 1987 guide-
lines(the 1991 Policy guidelines) The 1991 policy guideline applied
to all request for parole heard by the Parole Board.

24.   The 1987 Guidelines required the Parole Board to calculate
      a Salient Factor Score (SFS) for each prisoner. Based on a
parole applicants SFS, the Parole Board then calculated a "total
point score", using pre-and post incarceration factors, on which

it based its decision to either grant or deny parole. In "unusual circumstances," when mitigating and/or countervailing factors applied, the Parole Board could depart from an action (to grant or deny parole) other wise indcated by an inmate's total score.

25.    In the case of an initial parole hearing, the 1987 Guidelines state that:

> After deteminating an adult parole candidate's SFS score and after applying the pre and post incarceration factors to arrive at a total point score pursuant to § 204 and Appendix 2-1, the Board shall take one (1) of the following actions:

> (a)    If Points = 0 Parole shall be granted at intial hearing with low level of supervision required.

> (b)    If Points = 1 Parole shall be granted at intial hearing with high level of supervision required.

> (c)    If Points = 2 Parole shall be granted at initial hearing with the highest level of supervision required; or

> (d)    If Points = 3-5 Parole shall be denied at initial hearing and rehearing scheduleed.

26.    In the case of Parole Rehearing, the 1987 Guidelines state that:

> In determining whether to release on parole an adult or a youth offender appearing before the board at a parole

(7)

rehearing, the board shall take the total point score
from the initial hearing and ajust that score according
to the institutional record of the canidate since the
last hearing pursuant to Appendix 2-2. The Board shall
then take one of the following actions :

(A)  If Points =0-3: Parole shall be granted at this hearing
                     with the highest supervision required;or

(B)  If Points =4-5  Parole shall be denied and a rehearing
                     date scheduled.

27.  The 1987 Guidelines directed the Parole Board to grant parole
to an adult at a parole rehearing if the final ajusted score is less
than four, except in "unusual circumstances" as discussed infra.¶ 40-
42.

28.  The manner in which the"institutinal record of the canidate"
is used to adjust the total points scored from intial hearing, as
required by 28 D.C.M.R. § 204.21 also is the subject of precise
guidelines adopted by the parole board. The adjustment is done via
the point grid in Appendices 2-1 and 2-2 of Title 28 of the District
of Columbia Municiple Regulations. Appendix 2-1 is used to calculate
an inmate SFS and total point score at the initial parole hearing,
and Appendix 2-2 is used to calculate an inmates SFS and total point
score at a parole rehearing.

29.  Pursuant to Appendices 2-1 and 2-2 of the Parole Board Guide-
lines in parole hearings, one point can be added to an inmate's
total point score for negative institutional behavior.

30.    In section V 1.A.1 of 1991 Policy Guideline, the Parole Board defined the types of institutional disciplinary actions that would qualify as "negative institutional behavior".

1.    Negative Institutional Behavior consist of serious or repeated major disciplinary infractions as described below that are sanctioned under Department Of corrections due process procedures:

    A.    In Initial Parole consideration cases, the following disciplinary infractions shall ordinarily be considered as negative institutional behavior.

    (1) One class I Offense for murder, manslaughter, kidnapping, armed robbery or first degree burglary at any time during the minimum sentence (see DCMR 28-502.3,May 1987), or

    (2) One class 1 Offense... during the 12 month preceeding the hearing or during the last half of the minimum sentence up to a period of three years, whichever is longer; or

    (3) Two class II Offenses... during the 12 months preceding the hearing or during the last half of the minimum sentence up to a point of three years, whichever is longer.

    B.    In Parole Reconsideration cases, the following discipl- inary infractions occurring since the preceding release consideration on the sentence shall ordinarily be considered as negative institutional behavior:

    (1) One class I Offense (see DCMR 28-502.3 through 502.17 may 1987); or

(9)

(2) Two class II Offenses (see DCMR 28-503.2 through 503.12 May 1987).

31.    Pursuant to Appendices 2-1 and 2-2, in Parole hearings, one point can be subtracted from an inmate's total point score for "Program achievement" ( referred to in the 1991 Policy Guidelines as "sustained program or work assignment achievement")

32.    Section V 1 (A)(2)(A) of the 1991 Policy Guideline defines "sustained program or work assignment achievement" for purposes of Appendix 2-1 as:

> In Initial Parole Consideration cases, the following accomplishment shall ordinary be considered as sustained program or work assignment achievement during the period of incarceration:
>    (1) Successful completion of one or two educational or vocational programs, or program levels, each of which enabled the offender to develop an academic or job-related skill, or enabled the offender to progress to a higher level of difficulty or skill in the program area.

33.    For purpose of parole rehearing under Appendix 2-2 of the 1987 Guidelines. Section V 1(A)(2)(b) of the 1991 Policy Guidelines defines sustained program or work assignment achievement": In Parole Reconsideration cases, the accomplishments set forth in Section V 1-A-2 (A) of this policy shall ordinarily be considered as sustained program or work assignment achievement where completion occured since the preceding consideration for release on the sentence.

34.    The " negative institutional behavior" and "program achievement"
factors correspond to two findings required by Appendices 2-1 and
2-2 : " Has the offender committed serious infractions ( adjudicated
under Department of Correction due process procedures)" ? and has
the offender demostrated sustained achievement in the area of prison
programs, industries or work assignments during this period of
incarceration?"

35.    As noted above, the Parole Board could depart from the result
dictated by section 204.19 and 204.21 only in "unusual circumstances",
and when it followed particular procedures:

> Any parole release decision falling outside the numerically
> determined guideline should be explained by reference to
> the specific aggravating or mitigating factors as stated in
> Appendices 2-1 and 2-2. Section 204.22 of the District of
> Columbia Municiple regulations provided that:
>
>> The Board may, in usual circumstances, waive the SFS and
>> the pre and post incarceration factors [which comprise the
>> total point score set forth in this chapter to grant or
>> deny parole to a parole canidate. In that case, the Board
>> shall specify in writing those factors which it used to
>> depart from the strict application of the provisions of
>> this chapter.

36.    In the 1991 Policy Guideline, the Parole Board further defined
the scope of its authority to deny parole for " unusual circumstances"
when a point scored indicated that parole should be granted. Section
V 1 (c) of the 1991 Policy Guideline  titled "Factor Countervailing

A Recommendation To Grant Parole, " list and define the following to constitute " unusual circumstances" countervailing a grant of parole:

    a. Repeated Failure Under Parole Supervision;
    b. Ongoing Criminal behavior;
    c. Lengthy history of criminal-related alcohol abuse;
    d. History of repetive sophisticated criminal behavior;
    e. Unusually extensive or serious prior record;
    f. Instant offense involved unusual cruelty to victims, which appliedwhere the offense involved physical, mental or emotional abuse beyond the degree needed to sustain a conviction on the instant offenses or especially vulerable victims such as children or elderly persons; and

    g. Repeated or extremely serious negative institutional behavior.

37.   The Parole Board further defined these "unusual circumstances" in the 1991 Policy Guideline and established objective criteria to determine their applicability.

II.        **THE PAROLE REGULATIONS USED BY DEFENDANTS**

38.   As noted above, the Revitalization Act abolished the D.C. Parole Board and directed the Federal Parole Commission to conduct parole hearings for the District Of columbia offenders according to the parole statutes, regulations, guidelines policies, and practices of the District of Columbia.

39.   After the commission assumed responsibility for the parole hearings for D.C. Code offenders, the Commission adopted the 2000

(12)

Guidelines and determine that those guidelines would apply to any D.C. Code offender that had not received an initial parole hearing as of August 5, 1998.

40.    Unlike the Parole Board's statutes, regulations, guidelines, policies, and practices, the commission's 2000 Guidelines and parole eligibility criteria do not consider the completion of a prisoner's "minimum sentence as satisfying offense accountability. Instead, the commission and its designees have repeatedly denied D.C. inmates request for parole, to include Plaintiff (Claude S. David    ), on the ground that they believe that inmates have not served enough time for their offenses,i.e., that the inmates have not been incarcerated long enough to satisfy the accountability for their offenses.

## A.    PAROLE ELIGIBILITY

41.    To account for the nature and circumstances of parole applicants offenses, and the history and characteristies of the prisoners, the 2000 Guideline contian instructions for the rating of certain offenses, Chapter 1 through 12 § 2.20 of the Commission Rules and procedures comprise the Commission's offense severity index.

42.    Like the 1987 Guidelines, the 2000 Guidelines require the Commission to determine a Salient Factor Score (SFS) for each parole applicant, which is based upon factors such as prior convictions, adjudications , prior committments, recent committment-free period, probation/parole/confinement/escape status at the  time of the current offenses, and the age of offenders. The Commission guidelines,

(13)

however, also allow the Commission to take into account any substantive information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond. Under the Commission guidelines the SFS becomes a part of a Base Point Score (BPS) which is comprised of three categories in which points are assigned according to the following factors:

> Category I - Risk of Recidivism (based on the SFS)
> Category II- Current or Prior Violence
> Category III- Death of victim or High level of violence

Although the Parole Board guidelines also require the formulation of an SFS for parole applicants, the Parole Board used the SFS only to determine the risk of recidivism on the part of parole applicants. The Parole Board did not use the SFS as the basis for an increase in the period of imprisonment the inmate had to serve to demostrate parole suitability.

43.    The Commission's method of determining parole eligibility is to apply the BPS ( the combination of points assigned from Categorys I-III) to the appropriate category of offense behavior, then to add the corresponding number of months to a parole applic- ant's minimum sentence ( the number of month an inmates must serve before becoming eligible for parole), based on the offense severity index. The months added to the parole applicants minimum sentence based on the BPS are considered to be the Base Guideline Range, and

(14)

are used by the Commission and its designees to determine the additional months of imprisonments that the inmate must serve above the months that the Parole Board required for parole eligibility.

## 1.    PROGRAM ACHIEVEMENT

44,    Pursuant to section 2.80 (e)(1) of the Commission's guidelines the commission "shall assess whether  the prison has demostrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confindment for the current offenses. Under the structure, the Commission has sole discretion of determining whether the parole applicant's work and program achievements are to be considered "superior" or "ordinary". Per the Commission's guidelines, if superior achievement is found, the award for superior program achievement shall be one-third of the number of months during which the prisoner demostrated superior program achievement ( The Parole Board guidelines, on the other hand, use an objective standard to reward "Sustained Program Achievement or Work assignment Achievement and an award is granted even for what the Commission might consider achievement.)

## 2.    INSTITUTIONAL BEHAVIOR

45.    The Commission's guidelines, like those of the Parole Board, take an inmate's institutional behavior into account for purposes of parole determinations. Unlike the parole Board's guidelines the 2000 Guidelines determine a range of months that the Commission

(15)

adds to an inmates minimum sentence under the provisions of 28
C.F.R. § 2.80 (j).

46.    Unlike the Parole Board's guidelines, 28 C.F.R. §§ 2.80(j)
and 2.36 do not limit consideration at initial parole hearing of
institutional behavior within the three years prior to the parole
hearing.

## B.    DETERMINING WHETHER TO GRANT PAROLE

46.    The total Guideline range ( the ultimate determination of
time to be served to established presumptive suitability for
parole pursuant to the Commission's guidelines structure) is reached
by adding : " the minimum of the base point guideline range, the
number of months required by the prisoner's parole eligibility
date, and the minimum of the guideline range for disciplinary
infractions, if applicable. Then subtract the award for superior
program achievement, if applicable.

47.    After caculating an inmates's total guideline range under the
2000 guidelines, the Commission "may, in unusual circumstances,
grant or deny parole to a prisoner not withstanding the guidelines
28 C.F.R, § 2.80(N).

48.    28 C.F.R. § 2.80(N) defines "unusual circumstances for purposes
of the 2000 Guidelines and provides example simular to those applied
by the Parole Board,but with out the definitions of such unusual

(16)

circumstances that the Parole Board adopted in the 1991 Policy
Guidelines to ensure consistency in parole determination.

49.   Pursuant to section 2.80(A)(4) of the Commission guidelines
regarding D.C. Code offenders, the commission's guidelines apply
to all prisoners who are given initial parole hearings on or after
August 5, 1998. For prisoners whose initial hearings were held prior
to August 5, 1998, the Commission shall render its decisions by
reference to the guidelines,applied by the D.C Board of Parole.
Thus,regardless of the statutes, regulations, guidelines, policies,
and practices in effect when an offender committed his or her crime
and was sentence , the offenders fitness for parole may hinge arb-
itrarily upon the date of his or her initial parole hearing.

III.        PLAINTIFF CLAUDE S. DAVID PAROLE HEARING

A.             DEFENDANT'S USE OF 2000 GUIDELINES

50.   On March 2, 1989 the Superior Court of the District of Columbia
sentenced Mr.David to imprisonment for a term of 15 years to life
for one count of violating D.C. Code § 22-2403 (second degree murder
while armed; currently D.C. § Code 22-2103)

51.   Under the statutes, regulations, guidelines, policies, and
practices of the Parole Board, Mr.David became eligible for parole
in September 1999 and was seen by the U.S. Parole Commission who
subsequently denied Plaintiff parole because he had not served the
required 194 months mandated by the U.S. Parole Commission. Rehear-
ing was scheduled for September 2001  Plaintiff was again denied

(17)

parolebecause he did not meet the required 194 month eligibility period he had only as of September, 2001 served a total of 162 months of his sentence. A reconsideration hearing was scheduled for August 2004.

52.   When Mr. David became eligible for parole  at his first parole hearing in September 1999, Defendants or their predecessor assigned a hearing examiner to conduct Mr.David initial parole hearing.

53.   Despite the fact that Mr.David had been convicted and sentence at a time when the parole board applied its 1987 Guidelines and other policies and practices to parole determinations, Defendants or their predecessors instructed hearing examiner to use the Defendants 2000 Guidelines  in evaluating Mr.David's request for parole.

54.   A third hearing took place on July 12, 2004, the U.S. Parole Commission again denied Plaintiff parole even though he had served 196 months beyond the 194 months required by the Base Point Score guideline range. Reason for denial was based on the aggravating factors of offense. A reconsideration hearing was scheduled for June 2007.

55.   Once again and on Plaintiffs fourth hearing before the parole Board on June 28, 2007 he had served a total of 231 months of a required Base Point Score guideline range of 194-214 months. Plaintiff.had served well over the maximum guideline range of 214 months. The U.S. Parole Board again denied Plaintiff parole based on the

exact same reason as the previous 2004 denial. It must be noted that Plaintiff had exceeded the minimum term of his sentence and had remained incident free and maintained good conduct for 18 years of a 15 -life sentence. Had also aquired all the necessary programs to award him superior program achievement. During the third and fourth hearing , the parole examiner recommended that he be granted parole for above stated reasons, however, once again parole was denied for the below stated aggravating factors:

> A decision above the Current Total Guidelines Range is warranted because you traveled from New York to the District of Columbia to confront the victim about drugs you thought he had stolen from you. You were in possession of a .45 caliber automatic firearm and one of the codefendants was in possession of a Uzi when you arrived at the victims apartment. You argued with the victim who denied knowledge of the drugs. During the argument you fired one shot in the victims chest. You committed a cold blooded murder that was the result of your drug trafficking activities...etc.

56. The decision to go above the guidelines Range and deny Plaintiff parole based on the same reason as previous parole denial was arbitrary and capricious.

## B.    MR.DAVID'S RIGHTS UNDER THE PAROLE BOARD'S 1987 GUIDELINES

57. Had the Commission evaluated Mr.David under the D.C. Parole Board guidelines, his SFS at the intial hearing would have been 9

and his total point score would have been 2 which would have
included a -1 after third rehearing for the sustained program
achievement.

58.    Under the Parole Board's 1987 Guidelines, if the grid point
score equals three or less, parole should be granted unless the
Parole Board finds that unusual circumstances are present, see
28 DCMR §§ 204.19, 204.22.

59.    No unusual circumstances as defined by the Parole Board in
the 1991 Poilcy Guidelines, would have applied in Mr.David's case.

60.    At his parole hearing in June, 2007, Mr.David's SFS under
the parole boards guidelines would have been 9 and his total
score also would have been a 0.

61.    Under the Parole Boards statute, regulations, guidelines,
policies, and practices, Mr.David satisfied the accountability
for his offense after serving 231 months as of June, 2007.

62.    The Defendants application of the 2000 Guidelines rather
than the 1987 Guidelines and the 1991 Policy Guidelines, and
repeated denial of Mr.David's request for parole on the ground
that he had not served sufficient time to be accountable for his
crime, however, has resulted in a significant risk of prolonging
Mr.David's incarceration and therefore constitutes an Ex Post Facto
Violation of the United States Constitution.

(20)

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully request of this court:

1.    Require Defendants to apply the Parole Board's statues, Regulations,Guidelines, Policies, and Practices, including, but not limited to the 1987 guidelines and 1991 Policy Guidelines, to Plaintiff request for parole.

2.    Determine that Plaintiff's service of their sentence to their parole eligiblity dates satify the offense accountability for parole consideration purposes;

3.    Order the Defendant to reconsider the decision rendered on Plaintiff application for parole based on the existing record in a manner consistant with D.C. Parole Boards 1987 Guidelines, 1991 Policy Guidelines. The Constitution and all other requirements of law.

4.    Award Plaintiff litigation expenses and grant such other relief as the court deems apprpriate.

Respectfully submitted,

Claude S. David # 11448-007
USP-Hazelton
P.O. Box 2000
Bruceton Mills,WV. 26525

F
08-1375
RMU

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

Claude S. David

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (PR)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

# 11448-007

**DEFENDANTS**

Edward F. Reilly, Jr. Chairman

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

A1  Case: 1:08-cv-01375
Assigned To : Urbina, Ricardo M.
Assign. Date : 8/8/2008
Description: Pro Se Gen. Civil

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government
Plaintiff

□ 3 Federal Question
(U.S. Government Not a Party)

☑ 2 U.S. Government
Defendant

□ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**□ A. Antitrust**

□ 410 Antitrust

**□ B. Personal Injury/
Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

**□ C. Administrative Agency
Review**

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**□ D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

**□ E. General Civil (Other) OR ☑ F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Immigration**
□ 462 Naturalization Application
□ 463 Habeas Corpus- Alien
Detainee
□ 465 Other Immigration Actions

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
☒ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or
defendant

□ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of
Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational
Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC
Rates/etc.

□ 460 Deportation
□ 470 Racketeer Influenced & Corrupt
Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/
Exchange
□ 875 Customer Challenge 12 USC
3410
□ 900 Appeal of fee determination
under equal access to Justice
□ 950 Constitutionality of State
Statutes
□ 890 Other Statutory Actions (if not
Administrative Agency Review
or Privacy Act)

O

| □ G. *Habeas Corpus/ 2255*<br><br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ H. *Employment Discrimination*<br><br>□ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ I. *FOIA/PRIVACY ACT*<br><br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ J. *Student Loan*<br><br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| □ K. *Labor/ERISA (non-employment)*<br><br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ L. *Other Civil Rights (non-employment)*<br><br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ M. *Contract*<br><br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ N. *Three-Judge Court*<br><br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

□ 1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS    □    ACTION UNDER F.R.C.P. 23      DEMAND $    Check YES only if demanded in complaint<br>**JURY DEMAND:** □ YES      □ NO

## VIII. RELATED CASE(S) IF ANY

(See instruction)    □ YES    □ NO    If yes, please complete related case form.

DATE        SIGNATURE OF ATTORNEY OF RECORD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.      RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd